Edward H. Morris, Receiver for Binga State Bank, Appellant, v. Fountain Thurman, Appellee.

Gen. No. 35,283.

Opinion filed October 19, 1931.

James B. Cashin, for appellant; Thomas P. Harris, of counsel.

Werner H. Sommers and Walter F. Sommers, for appellee.

Mr. Presiding Justice O'Connor delivered the opinion of the court.

January 14, 1931, plaintiff caused judgment by confession to be entered on a promissory note against the defendant for $7,349.32, which included $428.53 attorneys' fees. Afterwards the judgment was opened up and the defendant given leave to defend. There was a jury trial which resulted in a verdict and judgment in defendant's favor, and plaintiff appeals.

Plaintiff's suit is based on a judgment note made by the defendant, dated February 11, 1930, for $6,500 due six months after date, with interest at 7 per cent per annum. The note was payable to the Binga State Bank, of Chicago, of which plaintiff was receiver.

The theory of the defendant was that he was desirous of buying a farm and with that end in view, took the matter up with his brother-in-law, the president of the bank, who afterwards brought defendant's attention to some farms in Michigan, which, after investigation, were found unsatisfactory to the defendant. That a short time thereafter, the president of the bank called the defendant to the bank and asked him what he had done about the farm. The defendant replied that nothing had been done and thereupon the president of the bank asked the defendant to sign an application for the purchase of a farm, and presented to the defendant a blank on which there was some printed matter stating that it was such an application and requesting the defendant to sign it; that the defendant signed the paper believing it was such application; that at that time there were blank spaces

in the document; that thereafter no farm was ever called to his attention by the president; that afterwards plaintiff was appointed receiver of the bank and produced the document which turned out to be a promissory note in which the date, the amount, the time of payment, as well as certain collateral mentioned in the note, appeared to have been written in ,by some one not authorized by the defendant; that the defendant received no consideration for the note and therefore was not liable.

Plaintiff offered in evidence the note and a cashier's check of the Binga State Bank dated the same day as the note, viz., February 11, 1930, payable to the order of the defendant, and by him indorsed, the check showing that it had been paid by the bank. The defendant then put in his evidence as above stated, which was testified to by the defendant. In rebuttal the receiver and his assistant testified that after the receiver was appointed he endeavored to collect the note which he found among the assets of the bank; that the defendant stated he did not consider he owed the money because he received nothing for the note; that the defendant at that time further stated that he was called to the bank by the president, who told the de-fendant he was then ready to buy the farm for the defendant if defendant would sign the note; that the president would hold the money until the farm was bought, when he would pay for it and then give a deed to the defendant; that the defendant said nothing to the effect that he did not own the collateral mentioned in the note, the collateral mentioned being two $500 bonds, and two mortgages of $3,000 each.

The defendant's theory was that he signed the note without reading it, upon the representation that it was an application to purchase a farm and that he received no consideration for it. If these were the facts and defendant was not guilty of negligence in signing the

note, he would have a good defense and the evidence tending to show these facts was properly admitted on the trial. If, on the other hand, the jury believed from the evidence that defendant knew he was signing a note and if the president of the bank obtained the $6,500 for him, obviously defendant would be liable. He would also be liable even if he did not receive the money, if he knew he was signing a note or was negligent in not knowing the nature of the instrument, because by doing so, he enabled some one to obtain $6,500 of the bank's money.

The check for $6,500 on the bank is in the record and was signed by the cashier of the bank. It bears the purported indorsement of the defendant but he testified that it was not his signature but a witness testified for the plaintiff that he was familiar with defendant's signature, and that the check bore the genuine indorsement of the defendant and the check was stamped "paid." Neither the president of the bank, nor the cashier who signed the check, nor anyone connected with the bank was called as a witness nor were any records of the bank offered in evidence which might throw light on the transaction.

A great deal is said in the briefs as to whether plaintiff, the receiver, was the holder of the note in due course, and instructions were given to the jury on this question. We think none of such instructions should have been given. They would not enlighten the jury, but only confuse. The question for the jury was which version of the transaction they believed.

Considerable is said as to whether the receiver had a greater right to recover than the bank would have in case it had brought suit on the note. In *Golden v. Cervenka*, 278 Ill. 409, and other cases, the Supreme Court declared the law to be that where a representative of a bank induced a person to execute his note so as to make it appear as a part of the assets of the

bank, although the bank would not be able to recover on the note, a receiver of the bank would be entitled to a judgment. But we think this law is inapt here because there is no evidence that the note was in any way used to swell the assets of the bank. Moreover, if the president of the bank, in obtaining the execution of the note, knew that the note was being executed not for the benefit of the bank, but on the contrary, to obtain $6,500 of the bank's money, notice to the president would not be notice to the bank because their interests would be conflicting, and the bank or its receiver could bring suit on the note and recover unless the defendant without negligence on his part, executed what he thought was an application for a farm and not a promissory note.

What we have said disposes of plaintiff's contention that the court erred in refusing to give three instructions which he requested, Nos. 1, 2 and 5, by which plaintiff sought to have the jury told, among other things, that the plaintiff was an innocent holder of the note in question. We think there was no error in refusing these offered instructions. Nor was there any error in the court refusing to give plaintiff's requested instruction No. 3, which was to the effect that if the maker of the note has, by the careless execution of it "left room for an alteration to be made by insertion, without defacing the instrument or exciting the suspicion of a careful man, and the note by reason of the opportunity afforded is filled up with a larger amount than it bore when signed, the maker is liable thereon as altered, to any *bona fide* holder without notice." The question sought to be covered by this instruction was not in the case. There was no evidence that a larger amount had been inserted in the note. The only evidence on this question was that defendant testified that it was in blank when he signed and delivered it to the president of the bank. The instruction only tended

to confuse the jury and there was no evidence on which to base it.

Complaint is also made by the plaintiff to the refusal of the court to give his requested instructions 7 and 8. By No. 7, plaintiff sought to have the jury told, as a matter of law, that want or lack of consideration was no defense and that they should disregard whether the defendant received any money from the bank because the defendant was not permitted to make such defense. This was clearly erroneous under the facts which the evidence tended to show. Refused instruction 8 was also on the theory that plaintiff was an innocent person representing the depositors and creditors of the bank and that if they also believed that the defendant was an innocent person, the loss must fall upon the defendant. As we have above stated, if the defendant was not negligent in executing the note believing that it was an application to buy a farm, he would not be liable even though the bank itself was without fault.

Plaintiff further contends that the court gave a number of instructions at the request of the defendant which are reversibly erroneous. We think this contention must be sustained, the complaint being to instructions numbers 1, 2, 3, 9, 10, 11 and 12. We think each of these instructions is wrong. The jury were told by instruction 1 that if a note or other instrument in writing for the payment of money was entered into without a good or valuable consideration, it was lawful for the defendant to plead the want of consideration and that "if it shall appear that such instrument was made or entered into without a good or valuable consideration, the verdict shall be for the defendant," and that plaintiff was suing on a note for the payment of money and if the jury believed from the evidence the instrument was made without any good or valuable consideration the plaintiff could not recover. Under this instruc-

tion, if the jury found that the defendant received nothing for the note, their verdict must be for the defendant, which was clearly wrong. If the jury believed that he was negligent in executing the note or if they believed he was assisting some one to obtain $6,500 of the bank's money, the plaintiff obviously could recover.

By instruction 2, the jury were told that if they believed from the evidence that at the time defendant signed the note, the date, the amount, the time of payment and the collateral mentioned in the body of the note were not in the note, then the instrument was incomplete at that time. And unless the jury believed from the evidence that the defendant delivered the note to the bank for the purpose of giving effect to it as a promissory note, the plaintiff could not recover. The purport of this instruction is that if the defendant signed a blank note and the blanks were filled up after delivery, then there could be no recovery unless the defendant intended the document as a promissory note. This instruction ignored the lack of diligence, if any, on the part of the defendant in executing the document and it would in no way enlighten the jury as to the issues involved. Unless an instruction is intelligible and helpful it ought not to be given.

By instruction 3, the jury were told that "consideration, as applied to promissory notes, may consist either in some right, interest, profit or benefit accruing to the promisor or maker of the note, or some forbearance, detriment, loss or responsibility given, suffered or undertaken or agreed to be given, suffered or undertaken by the payee of the note at the request of the promisor or maker." It is obvious that this instruction was improper and apt to be misleading. The evidence of plaintiff was to the effect that defendant had received $6,500 of the bank's money for the note, while that offered by the defendant was to the effect that he had

received nothing. A long legal definition of consideration would manifestly tend to confuse and not enlighten the jury.

Instruction 9 told the jury that ''any alteration in a promissory note which changes the date, the sum payable, either for principal or interest, the time or place of payment, the number and the relations of the parties, the medium or currency in which payment is to be made, or which adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is a material alteration, and that when a negotiable instrument is fraudulently or materially altered by the holder without the assent of all the parties liable thereon, it is avoided except as against a party who has himself made, authorized, or assented to the alteration and subsequent endorsers.'' This may be a good legal definition of alteration but there was no evidence of any alteration in this case. There was no change of date, place, or time of payment, medium of currency in which payment was to be made or any of the other matters mentioned. After the above definition was given, the instruction continued and was, in substance, that if the jury believed from the evidence that the blank note was filled up, specifying in detail the various words and figures written in the blank note, and that this was done without the knowledge or consent of the defendant, then the note was void. For the reasons above stated in reference to instruction 2, this instruction was clearly wrong and should have been refused.

Instruction 11 was similar to instruction 9 and should have been refused.

By instruction 10, the jury were told that if they believed from the evidence that defendant did not receive any money from the bank or anything of value for it, and if they further believed from the evidence that the

note was not given by the defendant to the bank "in satisfaction of or as security for, an antecedent or pre-existing claim of any kind or nature" which the bank had or claimed to have against the defendant, etc.; there is considerably more to the instruction but what we have quoted is sufficient to show that it should have been refused. There was no claim that the note was given by the defendant to the bank in satisfaction of any claim it had against him or as security for any claim it might have against anyone.

Instruction 12. The court defined in the words of the statute a holder in due course of a promissory note and that the receiver in the instant case was not a holder in due course. This instruction obviously would not enlighten a jury and was wrong because all the evidence shows that the plaintiff as receiver, or the bank, could recover on this note unless the defendant was deceived in believing that he was executing an application for the purchase of a farm and that he was not guilty of such negligence in failing to read the document, as would bar him.

The question of fact to be determined by the jury in this case was not submitted to the jury but on the contrary if the jury followed the instructions of the court given at the request of the defendant they could return no verdict except for the defendant. For the reasons stated, the judgment of the municipal court of Chicago is reversed and the cause remanded for a new trial.

*Reversed and remanded for a new trial.*
McSurely and Matchett, JJ., concur.